ROBERT B. ERICSON (State Bar No. 115571)
ALBERT & WILL, LLP
2601 Airport Drive, Suite 345
Torrance, CA 90505
Tel. (310) 257-9363 / Fax (310) 257-9360
rericson@awllp.com

Attorneys for Plaintiff DJR DEALER SERVICES, INC.
dba BREA WAREHOUSING

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DJR DEALER SERVICES, INC. dba BREA WAREHOUSING, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CARING BRANDS INTERNATIONAL, LLC, an Oregon limited liability corporation; and, KEVIN KAHMANN, an individual,<br><br>Defendants. | CASE NO.: 8:20-CV-00647<br><br>**COMPLAINT FOR:**<br><br>**1) INDUCING BREACH OF CONTRACT; AND**<br>**2) INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

COMPLAINT; DEMAND FOR JURY TRIAL

Plaintiff DJR Dealer Services, Inc. dba Brea Warehousing alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states.

2. Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district. Defendants interfered with a contract that was to be performed in substantial part in Orange County, California and committed acts of interference in Orange County, California.

3. Plaintiff DJR Dealer Services Inc., DBA Brea Warehousing ("Brea") is a California corporation with its principal place of business in Brea, California.

4. Defendant Kevin Kahmann ("Kahmann") is an individual who is a citizen of the State of Oregon.

5. Defendant Caring Brands International, LLC ("Caring Brands") is an Oregon limited liability company with its principal place of business in Bend Oregon. Kahmann is a member and the manager of Caring Brands and its president and chief executive officer. Caring Brands' filings with the Oregon Secretary of State do not disclose any other members and Plaintiff knows of no other members of Caring Brands. Caring Brands does not appear in a search of the records of the California Secretary of State for limited liability corporations.

## GENERAL ALLEGATIONS

6. Brea is a sales agent for companies that sell automotive protection products to automobile dealerships and others. Automotive protection products include exterior paint protectant, interior protectant, glass protectant and similar products that automobile dealers resell to purchasers of automobiles.

COMPLAINT; DEMAND FOR JURY TRIAL

7. Xzilon, Inc. ("Xzilon") is a distributor of automotive protection products. Its principal place of business is in Brea, California. In 2018 and 2019 its warehouse and distribution center were located in Orange County, California. Xzilon currently maintains an office in Orange County, California.

8. Xzilon sells automotive protection products, including exterior protectant. Xzilon sells and distributes exterior protectant packaged in bottles (sometimes referred to as cans) and packaged on "wipes." Wipes are large towelettes on which the protectant is pre-applied. Xzilon also sells glass protectant for automobiles. Xzilon sells these products to automobile dealerships which resell the products to purchasers of automobiles.

9. Brea and Xzilon entered into a Warehousing and Fulfillment Agreement effective January 1, 2016, which was amended by Addendum #1 effective June 1, 2017 (the "Warehousing Agreement"). In the Warehousing Agreement, Xzilon agreed that Brea would be its exclusive provider: for exterior protectant packaged in cans (sometimes referred to as bottles) or on wipes; and glass protectant packaged on wipes. The initial term of the Warehousing Agreement was four years. The Warehousing Agreement automatically renewed for successive one-year periods in the absence 90-day notice of termination. Neither party has terminated the Warehousing Agreement.

10. The Warehousing Agreement was performed substantially in Orange County, California. Among other things, Brea delivered products from its facility in Orange County to Xzilon's facility in Orange County, and Xzilon made payments from its office in Orange County to Brea's office in Orange County.

11. Caring Brands, through Kahmann, learned about the Warehousing Agreement on several occasions. In 2018 the shareholders of Xzilon decided to sell the company. Xzilon originally proposed an asset sale. Kahmann was an interested buyer. As part of his due diligence, Kahmann learned of the Warehousing Agreement and that

Xzilon had agreed to acquire exterior protectant and glass protectant exclusively from Brea. The asset sale was not concluded.

12. The Xzilon shareholders then decided to pursue a sale of all of the stock of Xzilon. Xzilon circulated to potential buyers, including Kahmann and/or a company he controlled, an Acquisition Term Sheet containing a Proposal for the sale of all the shares of Xzilon. The Acquisition Term Sheet provided that the first potential buyer to accept the terms of the Proposal and pay a deposit would have a binding agreement to acquire Xzilon. Kahmann or a company he controlled were the first potential buyer to accept the terms of the Proposal and pay a deposit. Kahmann or a company he controlled then engaged in an extensive due diligence process during which Kahmann again learned of the Warehousing Agreement and that Brea was Xzilon's exclusive provider of exterior protectant and glass protectant.

13. Kahmann, directly or through a company he controlled, acquired all of the shares of Xzilon effective January 1, 2019.

14. After signing the Acquisition Term Sheet in about August 2018 but prior to acquiring the shares of Xzilon (either directly or through a company he controlled), Kahmann became actively involved in the day-to-day management of Xzilon and often was on its premises in Orange County. As a result, Kahmann knew of the implementation of the Warehousing Agreement and its exclusivity provisions.

15. As alleged above, defendant Kahmann also is the manager, member, president and chief executive officer of defendant Caring Brands and controls and directs its activities. Kahmann's knowledge about the Warehousing Agreement and its exclusivity provisions is imputed to Caring Brands. Caring Brands markets and sells its own exterior protectant and glass protectant for automobiles.

16. In December 2018 Xzilon intended to purchase exterior protectant from Brea pursuant to the Warehousing Agreement and have the protectant delivered to its warehouse in Orange County from Brea's warehouse in Orange County. Caring Brands,

COMPLAINT; DEMAND FOR JURY TRIAL

however, with full knowledge that Brea was Xzilon's exclusive provider of exterior product, intervened and supplied the exterior protectant to Xzilon and shipped it to Xzilon's offices in Orange County. From December 2018 to the present, Caring Brands has supplied exterior and glass protectant to Xzilon with full knowledge that Xzilon had a contract to buy those products exclusively from Brea. Caring Brand's conduct was and is authorized and directed by Kahmann. Caring Brand's and Kahmann's conduct induced Xzilon to breach its contract with Brea and interfered with Brea's contract with Xzilon.

17. In January 2019 Kahmann demanded that Brea amend the Warehousing Agreement to eliminate the provisions requiring Xzilon to purchase product exclusively from Brea. Brea rejected the demand and told Kahmann that the exclusive provider provisions remained in full force and effect. Kahmann's knowledge of these events is imputed to Caring Brands.

18. With full knowledge of Xzilon's ongoing obligation pursuant to the Warehousing Agreement to purchase exterior protectant product exclusively from Brea, Caring Brands has sold and supplied, and continues to sell and supply, exterior protectant and glass protectant to Xzilon. These acts are ongoing inducements by Caring Brands for Xzilon to breach its contract with Brea, and ongoing interference with Brea's Warehousing Agreement with Brea.

FIRST CAUSE OF ACTION

(Inducing Breach of Contract – Against All Defendants)

19. Brea realleges and incorporates the preceding paragraphs, as set forth above.

20. The Warehousing Agreement is a valid and enforceable contract between Brea and Xzilon. The contract requires Xzilon to purchase exterior protectant packaged as wipes or in bottles and glass protectant exclusively from Brea.

21. Kahmann and Caring Brands knew of the Warehousing Agreement and its exclusivity provisions as set forth above.

22. Caring Brands intended to cause Xzilon to breach its contractual obligation to buy exterior protectant and glass protectant exclusively from Brea.

23. Caring Brands caused Xzilon to breach the Warehousing Agreement with Brea by supplying exterior protectant and glass protectant to Xzilon despite Caring Brand's knowledge that Xzilon has a contractual obligation to buy that product exclusively from Brea.

24. Kahmann's and Caring Brand's actions diverted hundreds of thousands of dollars of Xzilon purchases of exterior protectant and glass protectant from Brea to Caring Brands. As a result of Kahmann's and Caring Brand's actions, Brea has lost profits of approximately $850,000 per year.

25. The actions of Kahmann and Caring Brands were committed fraudulently, oppressively and maliciously. As a result of this conduct, Brea is entitled to recover punitive damages from Kahmann and Caring Brands.

## SECOND CAUSE OF ACTION

(Interference with Contractual Relations – Against All Defendants)

26. Brea realleges and incorporates the preceding paragraphs, as set forth above.

27. The Warehousing Agreement is a valid and enforceable contract between Brea and Xzilon. The contract requires Xzilon to purchase exterior protectant packaged as wipes or in bottles and glass protectant exclusively from Brea.

28. Kahmann knew of the Warehousing Agreement and its exclusivity provisions as set forth above.

29. The conduct of Kahmann and Caring Brands interfered with, and was intended to interfere with, Brea's right to be the exclusive provider to Xzilon of exterior protectant product and glass protectant. Defendants' conduct is ongoing.

30. Kahmann's and Caring Brand's conduct diverted hundreds of thousands of Xzilon purchases of exterior protectant from Brea to Caring Brands. As a result of Kahmann's and Caring Brand's conduct, Brea has lost profits of approximately $850,000 per year.

31. The conduct of Kahmann and Caring Brands were committed fraudulently, oppressively and maliciously. As a result of this conduct, Brea is entitled to recover punitive damages from Kahmann and Caring Brands.

## PRAYER

WHEREFORE, Plaintiff DJR DEALER SERVICES, INC. dba BREA WAREHOUSING prays for Judgment against Defendants as follows:

1. For general, compensatory and consequential damages in the approximate amount of $850,000.00 per year, with the precise amount to be proven at trial;

2. For pre- and post-judgment interest;

3. For exemplary and punitive damages; and,

4. For such other relief as the Court may deem just and proper.

DATED: April 2, 2020                    ALBERT & WILL, LLP

                                        By: _____/s/_____
                                            ROBERT B. ERICSON
                                            Attorney for Plaintiff
                                            DJR DEALER SERVICES, INC. dba
                                            BREA WAREHOUSING

## DEMAND FOR JURY TRIAL

Plaintiff DJR DEALER SERVICES, INC. dba BREA WAREHOUSING hereby demands a jury trial for all claims and issues to which the right to a jury trial exists.

DATED: April 2, 2020        ALBERT & WILL, LLP

By: _____/s/_____
ROBERT B. ERICSON
Attorney for Plaintiff
DJR DEALER SERVICES, INC. dba
BREA WAREHOUSING